Joseph DeSPAIN, et al., Plaintiffs-Appellees Cross-Appellants,

v.

Marlin JOHNSTON, et al., Defendants-Appellants Cross-Appellees.

No. 82–2418.

United States Court of Appeals, Fifth Circuit.

May 11, 1984.

Rehearing Denied June 14, 1984.

James C. Todd, Asst. Atty. Gen., Austin, Tex., for Johnston et al.

David Crump, Atty., Legal Foundation of America, Houston, Tex., for amicus Gulf & Great Plains.

Harry H. Walsh, Huntsville, Tex., for Joseph Despain.

Before WISDOM, REAVLEY and JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

Joseph and Gail DeSpain instituted this action in federal court challenging the constitutionality of the procedures used to investigate and record alleged incidents of child abuse in Texas.[1] The plaintiffs sought injunctive relief, damages for alleged violation of their civil rights under 42 U.S.C. § 1983, declaratory relief, that §§ 34.05, 34.06, and 34.07 of the Texas Family Code are unconstitutional, and attorneys' fees. The defendants, a child welfare worker, her supervisor, and the Director of the Texas Department of Human Resources, maintain on appeal that the district court erred in ordering the removal of labels used to classify complaints of child abuse in the Texas state computer system.[2]

---

1. Texas law requires that a person having cause to believe that a child has been abused file a report with a county agency or with a law enforcement agency. Tex.Fam.Code Ann. §§ 34.01–.02 (Vernon 1975). When a complaint is received, the county welfare unit investigates and files a report. *Id.* § 34.05. Records of these investigatory reports are kept in a central computer registry, referred to as the Child Abuse and Neglect Reporting and Inquiry System (CANRIS). *Id.* § 34.06.

2. The following categories were created by regulation:

*Adjudicated*—The caseworker has documented that a civil or criminal court has made an affirmative adjudication of child abuse or neglect in the reported situation.

Identifying information about individuals in a CANRIS report with an Adjudicated disposition is retained for three years after the report is finalized or until the youngest child in the report reaches age 18, whichever is later. *Reason to Believe*—The caseworker and supervisor believe, based on a process of applying logical reasoning to available information, that abuse or neglect has occurred in the reported situation.

Identifying information about individuals in a CANRIS report with a disposition of Reason to Believe is retained for five years after the report is finalized.

*Unfounded*—The caseworker and supervisor have concluded, through a process of applying logical reasoning to available information,

The plaintiffs, parents accused of child abuse and their minor children, contend that the district court erred in failing to find that due process requires prior notice and a hearing before a state court may issue an order directing parents accused of child abuse to cooperate with a state investigation of the accusation. We express no opinion on these questions, because we find that the district court should have abstained under the principles enunciated in *Younger v. Harris,* 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and its progeny.[3] Accordingly, we vacate the district court's judgment on the merits of the case and its award of attorneys' fees to the plaintiffs,[4] and remand the case to the district court with instructions to dismiss the complaint.

## I. FACTS

The series of events that led to this lawsuit began on March 6, 1980. On that date, the Child Welfare Unit of the Texas Department of Human Resources in Huntsville, Texas, received the first of two complaints alleging that the plaintiffs, Joseph and Gail DeSpain, were abusing their children. The DeSpains were registered students at Sam Houston University, owner of the plaintiffs' apartment. The complainant alleged that the DeSpains were spanking their young children for no reason and were shouting to them "I hate you and wish you would go to hell."

Jackie Williamson, an employee of the Huntsville office of the Texas Department of Human Resources and a defendant in this case, investigated the complaint. She

met with the DeSpains, observed the children, and gathered information on the family. On March 10, 1980, the DeSpains called Williamson; they were upset that Williamson would not tell them who made the complaint. The following day Mrs. DeSpain reported to Williamson that the matter was an issue in the dean's office and in the Housing Department of the University. On April 9, 1980, Williamson reported to Mrs. DeSpain that the case was closed for lack of evidence of child abuse.[5]

On June 9, 1980, the Child Welfare Unit received a second allegation of child abuse from a different complainant. The unidentified complainant stated that he heard children screaming and noises that sounded as though the children were being thrown against the wall. Williamson attempted unsuccessfully to conduct an investigation into this complaint. On her initial visit to the DeSpains, she did not find anyone at home. She left a note requesting that the DeSpains come to her office the following morning. Joseph DeSpain communicated with Williamson and informed her that he would meet with her in the afternoon. Instead, he and his family left town for several days. On June 13, 1980, Williamson found the DeSpains at home, but they refused to speak with her or to cooperate with the investigation. They retained a lawyer who met with Williamson and stated that the DeSpains would not consent to the investigation unless they first could defend against the accusations in court.

that abuse or neglect has not occurred in the reported situation.
Identifying information about individuals in a CANRIS report with a disposition of Unfounded is retained for six months after the report is finalized.
*Moved*—A situation in which the persons involved in the reported situation moved before any of the above decisions could be made. Identifying information about individuals in a CANRIS report with a disposition of Family Moved is retained for five years after the report is finalized.
Appellants' Brief at 9–10.

**3.** *Younger* "establishes a presumption against federal intervention in orderly state proceedings

as well as a presumption in favor of the adequacy of state remedies." Note, Younger *Grows Older: Equitable Abstention in Civil Proceedings,* 50 N.Y.U.L.Rev. 871, 879 (1975).

**4.** In an action to enforce § 1983, 42 U.S.C. § 1983 (1979), the court "may allow the prevailing party ... a reasonable attorney's fee as part of the costs". 42 U.S.C. § 1988 (1979). Because we find that the district court should have abstained, the DeSpains are not "prevailing part[ies]" within the meaning of § 1988. *See Taylor v. Sterrett,* 5 Cir.1981, 640 F.2d 663.

**5.** This complaint was labeled "unfounded" in CANRIS. *See supra* note 2.

On June 25, 1980, Williamson obtained an ex parte order from the Walker County Court directing the DeSpains to cooperate with the investigation. The DeSpains continued to refuse to cooperate. On June 27, 1980, the DeSpains sought and obtained an ex parte temporary restraining order from the federal district court for the Southern District of Texas enjoining the enforcement of the state court order requiring the DeSpains to cooperate with the state investigation. There is no evidence in the record that the plaintiffs ever attempted to dissolve the state court order. Thereafter, the defendants sought a non-ex parte order from the state court.

On July 18, 1980, the federal district court extended the temporary restraining order pending a hearing on the merits in the state court. On September 25, 1980, because of the lapse of time since the alleged incident,[6] the state court denied the defendants' request for a second order to cooperate.

In January 1982, the federal district court conducted a trial on the merits of the case, having retained jurisdiction pending the outcome in the state court. The district court found that the state employees had acted reasonably and in good faith in attempting to investigate the complaint based on a regulatory scheme that they reasonably believed was valid. Accordingly, the court denied the DeSpains' prayer for damages under section 1983. 42 U.S.C. § 1983 (1979). The court also dismissed the DeSpains' due process challenges to the Texas Family Code. The district court found, however, that certain regulations directing that labels be placed on the records of alleged child abusers maintained in CANRIS violated their right to privacy. The court held that two of the labels—"reason to believe" that child abuse has oc-

curred and "alleged perpetrator"—could not be used in the state record-keeping system absent a judicial determination that child abuse had occurred.

Before reaching the merits, the district court considered and rejected the defendants' contention that it should abstain from hearing the case. The district judge stated that he had "properly abstained from examining the merits ... while the state court proceeding was pending", but that the case was properly before the federal court after the state court proceeding had concluded. Memorandum and Order of the United States District Court for the Southern District of Texas, 2 Record 218, 220. The district court awarded the plaintiffs $25,000 in attorneys' fees and $1,747.60 in expenses.

We disagree with the district court's decision. The application of the *Younger* abstention doctrine requires a careful balancing of state and national interests within the context of the general principles underlying the doctrine. After undertaking this analysis, we find that the district court should have abstained in the first instance when the DeSpains sought a temporary restraining order. The judgment of the district court therefore must be vacated.

## II. THE *YOUNGER* DOCTRINE

Under the broad proscriptions of *Younger v. Harris* and its companion cases, a federal district court presumptively must abstain from granting either injunctive [7] or declaratory relief [8] when state criminal actions or certain categories of state civil proceedings [9] are pending against the federal plaintiff at the time that federal action is commenced. This doctrine, alternately called abstention or nonintervention, is based on considerations

---

**6.** The transcript of the state court proceeding is not part of the record in this case. We are unable, therefore, to determine whether the DeSpains appeared at this proceeding.

**7.** *Younger v. Harris*, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669.

**8.** *Samuels v. Mackell*, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688.

**9.** *See, e.g., Trainor v. Hernandez*, 1977, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486, and *Huffman v. Pursue, Ltd.*, 1975, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482. *See infra* notes 13–14, 17–18 and accompanying text.

of equity, comity, and federalism. *Younger*, 401 U.S. at 43–45, 91 S.Ct. at 750–751.

■ The concept of equity reflects "the traditional reluctance of courts of equity, even within a unitary system, to interfere with a criminal prosecution". *Huffman v. Pursue, Ltd.*, 1975, 420 U.S. 592, 605, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482. Thus, if a state criminal prosecution is pending when the federal complaint is filed [10] or is instituted before any action of substance has commenced in the federal proceeding,[11] the federal court should dismiss an action seeking equitable relief. Equitable concerns do not *mandate* federal restraint in the ordinary state civil proceedings, although these concerns are relevant to cases such as the one at bar in which the civil proceeding is similar to a criminal proceeding. In such cases, the principles of comity and federalism, in conjunction with equitable concerns, may require federal abstention. *Id.* 420 U.S. at 604–05, 95 S.Ct. at 1208.

■ The notion of comity, "that is, a proper respect for state functions", reflects "a recognition ... that the entire country is made up of a union of separate state governments, and continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways". *Younger*, 401 U.S. at 44, 91 S.Ct. at 750. Comity, *untempered by other concerns*, counsels against federal intervention in state court proceedings, whether civil or criminal, pending or threatened. This construction goes too far, however, if it gives inadequate attention to the federal interests.

■ The third consideration underlying *Younger*, the principle of federalism, tempers the doctrine of comity and envisions a balancing of state and federal interests to determine the proper roles of the state and federal courts. Judicial perception of what

constitutes the proper view of American federalism has shifted from time to time from a Madisonian or Hamiltonian view to a Jeffersonian view and to other views in between. The current Supreme Court position on "Our Federalism" binding inferior courts is stated in *Younger:*

> "The concept [of Our Federalism] ... represent[s] ... a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the states."

*Id.* The requirement of the *Younger* doctrine quoted above applies to both pending criminal and civil cases, though in differing degrees. *Id.* at 45, 91 S.Ct. at 751.

■ To apply the *Younger* doctrine, the federal district court must strike a balance between the interests of the state and national governments.[12] The role of the federal court depends on the nature of the state court proceeding, the timing of the request for federal relief, and the availability of a forum to protect federal rights.

### A. The Nature of the Proceeding.

■ The state has a strong interest in enforcing its criminal laws. If the only risk to the state defendant's federal rights is one that can be eliminated by the defense to a single criminal prosecution, the balance tips heavily in favor of the state government and its interest in enforcing its criminal laws. *Id.* at 47, 91 S.Ct. at 752. The *Younger* doctrine establishes a presumption that the federal courts should abstain in cases in which a state criminal proceeding is pending. This presumption is overcome by a showing of bad faith or intent to harass. When the state in a crim-

---

**10.** *E.g., Younger v. Harris*, 1971, 401 U.S. 37, 97 S.Ct. 746, 27 L.Ed.2d 669.

**11.** *Hicks v. Miranda*, 1975, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223.

**12.** This task is a delicate one. "As representative of the dominant partner in the necessary interplay between the two sovereigns, federal courts must be especially sensitive to this balance and assiduous in its preservation." *Duke v. Texas*, 5 Cir.1973, 477 F.2d 244, 252.

inal proceeding acts in bad faith or with the purpose of harassing the federal plaintiff, its actions are not "legitimate activities". In those extraordinary cases, the balance tips in favor of the national government, and federal courts should act to protect federal interests. *Id.* at 47, 91 S.Ct. at 752. Equitable relief by the federal court is warranted, because the federal plaintiff faces a risk of irreparable injury that is both "great and immediate". *Id.*

State civil proceedings present a different balance. The Supreme Court has never held that the federal district courts should abstain in all cases in which a state civil proceeding is pending.[13] Certain civil proceedings, however, involve state interests that are analogous to those involved in state criminal proceedings.[14] A federal court should abstain in cases in which the state is a party and the proceeding is "in aid of and closely related to criminal statutes" or the "offense to a state interest [from federal intervention] would be as great as it would be were the proceeding a criminal one". *Huffman,* 420 U.S. at 605, 95 S.Ct. at 1208; *see, e.g., Moore v. Sims,* 1979, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (child abuse); *Trainor v. Hernandez,* 1977, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (return of welfare payments obtained by fraud); *Juidice v. Vail,* 1977, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (contempt of court). To determine whether it must abstain when a state civil proceeding is pending, the federal court must ana-

lyze the interests of the state in the proceeding.

### B. Pendency of the State Proceeding.

Timing is crucial to the applicability of *Younger.* When the federal action is instituted before any state activity has taken place, the risk of federal interference in the affairs of the state is minimal, and the state's interest is correspondingly weakened. *The Supreme Court, 1970 Term,* 85 Harv.L.Rev. 40, 301 (1971). Thus, a federal court is free to consider a challenge to the constitutionality of a state statute when the state is not proceeding against the federal plaintiff on the basis of the challenged statute. When a state proceeding is commenced before the federal suit is filed or before the federal court takes any substantive action in the case, however, the balance weighs in favor of the state: the risk of federal interference is greater and the state interest is stronger. *Id.* Accordingly, in these circumstances the *Younger* doctrine requires that the constitutional questions be raised in the state court proceeding, and that the federal court dismiss the suit before it. *See* Comment, *Federal Equitable Restraint: A* Younger *Analysis in New Settings,* 35 Md.L.Rev. 483, 509 (1975). The state interest that is triggered by the institution of the state proceeding continues through the completion of the state appeals process.[15] Accordingly, the *Younger* doctrine requires that federal courts abstain when a state proceeding is

---

**13.** The Supreme Court has declined to resolve this question. *See, e.g., Huffman v. Pursue, Ltd.,* 1975, 420 U.S. 592, 607, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482, stating that "we need make no general pronouncements upon the applicability of *Younger* to all civil litigation", and *Moore v. Sims,* 1979, 442 U.S. 415, 423 n. 8, 99 S.Ct. 2371, 2377 n. 8, 60 L.Ed.2d 994, noting that "we do not remotely suggest 'that every pending proceeding between a State and federal plaintiff justifies abstention' ".

**14.** *See* Rosenfeld, *The Place of State Courts in the Era of* Younger v. Harris, 59 B.U.L.Rev. 597, 621–22 (1979), explaining that "[t]he state's interest [in a civil proceeding] is readily apparent when ... the state through one of its agencies, acts essentially as a prosecutor; ... that state has initiated an action deemed sufficiently im-

portant to warrant creation of a public remedy by the state legislature."

**15.** *See Huffman v. Pursue, Ltd.,* 1975, 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482, holding that "[a] necessary concomitant of Younger is that a party ... must exhaust his state appellate remedies before seeking relief in the District Court", and *Duke v. Texas,* 5 Cir. 1973, 477 F.2d 244, 252, stating that "failure to pursue state appellate remedies is a factor to be considered in refusing federal intervention in an ongoing state civil proceeding .... A party may not invoke the aid of a federal court, alleging that his state remedies are inadequate, without having first tested the sufficiency of those remedies and having found them to be wanting."

pending and the state appellate procedure has not been exhausted.

### C. Availability of a Forum.

 The operation of the *Younger* doctrine is dependent upon the ability of the state courts to provide an adequate remedy for the violation of federal rights [16] and upon the recognition that state courts share "the solemn responsibility ... to safeguard constitutional rights". *Trainor v. Hernandez,* 1977, 431 U.S. 434, 443, 97 S.Ct. 1911, 1917, 52 L.Ed.2d 486. If state law bars consideration of the federal issues in the state proceeding, the federal court should not abstain. *Cf. Moore v. Sims,* 1979, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994. Alternatively, if the federal issues can be raised in the state proceeding, the failure to abstain would disrupt suits brought by the state and would reflect negatively on the ability of the state courts. *Id.* at 426, 99 S.Ct. at 2379. The federal court therefore must ascertain whether the state law imposes a "barrier to the assertion of constitutional issues" in the state proceeding. *Id.* at 429, 99 S.Ct. at 2380. To overcome the presumption in favor of abstention, the federal plaintiff must show that he had no *opportunity* to litigate the federal issue in state court.

### III. APPLICATION OF *YOUNGER*

 We find that the district court should have abstained and dismissed the complaint in this case, because (1) a state judicial proceeding was ongoing at the time that the plaintiffs initiated the federal action, (2) that proceeding implicated impor-

tant state interests, and (3) the proceeding presented an adequate opportunity to raise constitutional challenges. *See Middlesex Ethics Committee v. Garden State Bar Association,* 1982, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116. The district court's action effectively halted a legitimate state investigation into an allegation of child abuse and enjoined a pending state court proceeding in contravention of the *Younger* doctrine.

The principal flaw in the district court's analysis regarding abstention was it focus on the time at which it addressed the merits of the case before it. The initial frame of reference for abstention purposes is the time that the federal complaint is filed. If a state action is pending at this time, the federal action must be dismissed. Only when no state proceeding is pending at the time that the federal action is filed is it necessary for the district court to reconsider the abstention issue before taking any action of substance on the merits. *Hicks v. Miranda,* 1975, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223. At the time that the DeSpains filed the federal complaint requesting injunctive relief and the district court issued the temporary restraining order,[17] a state proceeding was *ongoing* within the meaning of *Younger.*

In the most basic sense, a state proceeding is *pending* when it is begun before the federal proceeding is initiated and the state court appeals are not exhausted at the time of the federal filing.[18] The courts and the commentators uniformly accept this princi-

---

**16.** Note, Younger *Grows Older: Equitable Abstention in Civil Proceedings,* 50 N.Y.U.L.Rev. 871, 879 (1975).

**17.** If *Younger* prohibits the granting of permanent injunctive or declaratory relief, federal preliminary relief is also unavailable.
"Although only temporary, the [preliminary] injunction does prohibit state and local enforcement activities against the federal plaintiff pending final resolution of his case in federal court. Such a result seriously impairs the state's interest in enforcing its criminal laws, and implicates the concerns for federalism which lie at the heart of Younger."

*Doran v. Salem Inn, Inc.,* 1975, 422 U.S. 922, 930, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648.

**18.** More difficult issues are presented when the federal filing precedes the initiation of the state proceeding. In such cases, the federal court should abstain if the state proceeding is begun before any federal "proceedings of substance on the merits" have taken place. *Hicks v. Miranda,* 1975, 422 U.S. 332, 349, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223. The determinative factor, "proceedings of substance," has not been judicially defined.

ple.[19] In *Jones v. Wade*, 5 Cir.1973, 479 F.2d 1176, this Court stated that "pendency is determined *at the time that the federal complaint is filed*". *Id.* at 1181 n. 6 (emphasis added). The Sixth Circuit adopted the same approach in *Armour & Co. v. Ball*, 6 Cir.1972, 468 F.2d 76. "Reasonably read, 'a pending state proceeding' means a proceeding under state law that is pending *when a complaint is filed in federal court* seeking declaratory or injunctive relief from the application of that state law." *Id.* at 79 (emphasis added).

State court jurisdiction was invoked when Williamson filed a request for an ex parte order to cooperate. At this time, a state proceeding was pending for purposes of assessing the propriety of federal abstention. Once invoked, the state court's jurisdiction is held "to the exclusion of [a court of the United States] until its duty is fully performed and the jurisdiction invoked is exhausted". *Duke v. Texas*, 5 Cir.1973, 477 F.2d 244, 251 (quoting *Taylor v. Taintor*, 1873, 83 U.S. (16 Wall.) 366, 370, 21 L.Ed. 287, 290). The DeSpains' failure to avail themselves of the state courts to contest the ex parte order should not give them access to federal court to obtain temporary injunctive relief. *See Juidice v. Vail*, 1977, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376. The state court proceeding was "pending" within the meaning of *Younger* when the request for the ex parte order was filed, and it remained "pending" until the appellate proceedings were exhausted.[20] Because the *Younger* doctrine counsels that the federal action be *dismissed* when a state proceeding is pending, the district court erred in issuing the temporary restraining order awaiting the outcome of the state court proceeding.[21]

That a state civil proceeding is pending is a necessary but not always a sufficient cause for federal abstention. A federal district court must defer to an ongoing state court civil proceeding only when the proceeding implicates important state interests. The significance of a state's interest in a civil proceeding may derive from the subject matter of the litigation, as well as from the state's role in the litigation. In this case, both factors underscore the importance of the state's interest in the state proceeding against the DeSpains.

In *Moore v. Sims*, 1979, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994, the Supreme Court found that "[f]amily relations are a traditional area of state concern." 442 U.S. at 434, 99 S.Ct. at 2382. In *Moore*, as in the present case, the state proceeding was initiated in the context of child abuse. Child welfare has long been a recognized area of state concern. *See Prince v. Commonwealth of Massachusetts*, 1944, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645. In addition, the investigation of child abuse and neglect is "in aid of and closely related to criminal statutes". *Huffman*, 420 U.S. at 605, 95 S.Ct. at 1208; *see also Moore v. Sims*, 442 U.S. at 423, 99 S.Ct. at 2377 (discussing Texas law). Abstention is particularly appropriate in civil proceedings that invoke strong state interest, because they are analogous to criminal proceedings.

**19.** *See, e.g.,* C. Wright, *Law of Federal Courts* § 52A at 325–26 (4th ed. 1983), focusing on the time the federal action is commenced, and Comment, *Federal Equitable Restraint: A Younger Analysis In New Settings,* 35 Md.L.Rev. 83, 509 (1975), stating that a state proceeding is pending when it has been commenced prior to the federal suit. *See also The Supreme Court, 1970 Term,* 85 Harv.L.Rev. 40, 309 (1971), suggesting an alternative approach: "the date of first official action against an individual" is the relevant date to determine whether a state action is pending.

**20.** Comity requires that "federal courts ... allow state appellate courts the opportunity to act without interference to correct state law or lower court interpretations of state law." Comment, *Federal Equitable Restraint: A Younger Analysis in New Settings,* 35 Md.L.Rev. 483, 502 (1975).

**21.** *See Juidice v. Vail,* 1977, 430 U.S. 327, 347, 97 S.Ct. 1211, 1223, 51 L.Ed.2d 376 (Stewart, J., dissenting), distinguishing *Younger* abstention and *Pullman* abstention. "Under Pullman abstention, the federal court may retain jurisdiction pending state-court interpretation of an ambiguous statute, while under Younger it may not [retain jurisdiction]." *Id.* at 348. *See also* Note, *Younger Grows Older: Equitable Abstention in Civil Proceedings,* 50 N.Y.U.L.Rev. 871, 898 (1975).

The state's interest is heightened in a case, such as this one, in which it is a party to the state court proceeding. *Huffman,* 420 U.S. at 605, 95 S.Ct. at 1208. Because of the state's interest in the case at bar, the second element of the *Younger* analysis also indicates that the federal district court should not have entertained the DeSpains' action.

The final requirement for *Younger* abstention is the availability of an opportunity to present the federal claims in the state court proceeding. There is some question whether an ex parte proceeding satisfies this requirement. This concern, however, need not delay us. All that is required "in order for *Younger* and *Huffman* to apply ... [is] an opportunity to fairly pursue [the] constitutional claims in the ongoing state proceeding ..., [the] failure to avail [oneself] of such opportunity does not mean that the state proceedings [are] inadequate". *Juidice v. Vail,* 1977, 430 U.S. 327, 337, 97 S.Ct. at 1218. An *"actual* hearing" is not required. *Id.* (emphasis in the original). The Texas procedure satisfies this standard.

Under rule 680 of the Texas Rules of Civil Procedure, a party against whom an ex parte order is issued may appear within two days and move to dissolve the order. Tex.R.Civ.P. 680 (Vernon 1975). The DeSpains did not attempt to invoke this procedure. Thus, they fall squarely within the language of *Juidice v. Vail,* and cannot rely on their failure to invoke the state procedures to allege that those procedures were inadequate.

The Supreme Court considered the Texas state procedure in the context of the Texas Family Code and found it adequate. *Moore v. Sims,* 442 U.S. at 425, 99 S.Ct. at 2378. Discussing whether a constitutional challenge to the child-abuse reporting system, here at issue, could be raised in a state proceeding to remove a child from the home, the Court stated that "Texas law is apparently as accomodating as the federal forum .... [A]bstention is appropriate unless state law *clearly bars the interposition of the constitutional claims." Id.* at 425–26, 99 S.Ct. at 2378–79 (emphasis added). We agree that Texas law poses no procedural bar to the constitutional claims. Accordingly, we find that the DeSpains had an adequate opportunity to present their federal claims in the state court.

Because all three elements of the *Younger* analysis were present, the district court should have abstained and dismissed the action, unless it found that one of the limited exceptions to *Younger* applied.[22] A federal court should not abstain when the state court proceeding is brought in bad faith or with the purpose of harassing the federal plaintiff. *Younger,* 401 U.S. at 49, 91 S.Ct. at 753. We do not find any indication in the record, nor did the district court find any evidence, that the defendants acted in bad faith or with the intent to harass the plaintiffs. Rather, the record shows and the district court found that the defendants acted in accordance with established procedures. Extraordinary circumstances also justify federal intervention. *Id.* at 53–54, 91 S.Ct. at 754–55. Among these circumstances is a finding that a state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it". *Id.* (citation omitted). In *Moore,* 442 U.S. at 432, 99 S.Ct. at 2381, the Supreme Court examined Title 2 of the Texas Family Code and held that it could

---

**22.** The usual requirement for equitable relief is a showing of irreparable injury. Such a showing is not sufficient in the *Younger* context. Underlying the principle of comity is a presumption that "state courts will adhere to constitutional standards, and the mere possibility of erroneous application of those standards will not amount to the irreparable injury necessary to justify a disruption of orderly state proceed-

ings." Note, *Federal Intervention in State Court Proceedings: Expansion of the* Younger *Doctrine by Huffman v. Pursue, Ltd.,* 29 Sw.L.J. 636, 639 (1975). Thus, the plaintiff must prove that a great and immediate threat of irreparable harm exists to overcome the presumption that the federal court should abstain in a case to which *Younger* applies.

not be credibly argued that the statute was within this exception. No other "extraordinary circumstance" was alleged.

The *Younger* doctrine mandated abstention in this case. The district court's failure to dismiss the complaint, therefore, tainted the later federal court proceeding. Because we find that the district court should have abstained from taking any action on the DeSpains' complaint, we do not reach the substantive issues. The judgment of the district court is VACATED, and the case is REMANDED with instructions to dismiss the complaint.