**Rev. Robert TILTON and Word of Faith Outreach Center Church, Plaintiffs,**

v.

**Norma SMITH and the Honorable Eric V. Moye, Defendants.**

**Civ. A. No. 3:93-CV-1348-H.**

United States District Court, N.D. Texas, Dallas Division.

July 19, 1993.

---

Rhonda D. Byrd and Belinda A. Vrielink, Thompson Coe Cousins & Irons, Dallas, TX, for plaintiffs.

C. Tony Wright, Wright & McRea, Dallas, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

On July 16, 1993 the Court held a conference on Plaintiffs' Original Complaint for a Declaratory Judgment, for a Temporary Restraining Order, and for Injunctive Relief, filed July 9, 1993; Defendant Norma Smith's Motion to Dismiss, filed July 14, 1993; and Plaintiffs' Reply, filed July 16, 1993. After considering the parties' submissions and the arguments of counsel, the Court concludes that Plaintiffs' application for a temporary restraining order will be **DENIED** and that this case will be **DISMISSED** without prejudice.

## I. Background

Plaintiffs are a church and the head pastor of that church. They have been ordered to produce various records in a pending state court tort suit in which Defendant Smith is the plaintiff and Defendant Moyé is the presiding judge.[1] Plaintiffs resist the production of many of these documents, contending that the disclosure of the requested records would violate their (and the church members') constitutional free exercise, free association, and privacy rights. In the present case Plaintiffs seek declaratory and injunctive relief. They ask this Court to find that the orders of the state trial court that compel discovery of document request numbers 5, 19, and 37 of a subpoena *duces tecum* abridge their constitutional rights.[2] Plaintiffs also ask this Court to enjoin enforcement of these discovery orders. Plaintiffs assert that this Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 2201, and 42 U.S.C. § 1983.

A brief review of the relevant procedural history of this controversy is in order. In the state court suit, Smith served Plaintiff Tilton with a notice of oral deposition *duces tecum*. The *duces tecum* contained forty-one requests for documents. Plaintiffs objected

1. The state court suit is styled Norma Smith v. Robert "Bob" Tilton, individually, and Robert Tilton, d/b/a/ Robert Tilton Ministries and Word of Faith World Outreach Center Church, No. 92–5197–E (101st Jud. Dist. Ct.). Judge Moyé is sued in his official capacity as the presiding judge in the state court suit.

2. Request number 5 seeks "[r]ecords (medical or otherwise) that reveal the identity, address and telephone numbers of any and all persons who have appeared on either the Word of Faith Outreach Church Sunday morning broadcast and/or *Success 'N–Life* broadcast who had been portrayed as being cured of any physical or medical illness or abnormalities during the past five (5) years."

Request 19 seeks "[a]ny and all documents referring to Word of Faith accounts with a '77' status." Apparently, 77 status results if the church believes that a church member is incompetent or shows signs of suffering from a mental disorder.

Request 37 seeks "[a]ny and all records ... used to document and/or substantiate the healing claim [of a person named 'Andre'—who claimed to be healed of AIDS]."

to these requests and filed a motion for a protective order in the state court in which Plaintiffs generally raised the same constitutional arguments that they raise here. Plaintiffs also made specific constitutional objections to document requests numbers 4, 5, 12(d), and 37.

Smith then filed a motion to compel the production of the requested documents pursuant to the Texas Rules of Civil Procedure. On June 21, 1993, Judge Moyé granted Smith's motion to compel and ordered Plaintiffs to turn over the requested documents.[3] On June 23, Plaintiffs filed in the Texas Supreme Court an emergency motion to stay Judge Moyé's discovery orders, a motion for leave to file a petition for a writ of mandamus, and a petition for a writ of mandamus. In these pleadings, Plaintiffs asked the state supreme court to vacate Judge Moyé's discovery orders and to grant a protective order for the four document requests noted above.

Although the Texas Supreme Court initially granted an emergency stay, that court later vacated its initial stay order, granted Plaintiffs' motion for a stay pending the court's determination of Plaintiffs' motion for leave to file a petition for a writ of mandamus on Judge Moyé's order that compelled production of document requests numbers 4 and 12(d), and overruled Plaintiffs' motion to stay Judge Moyé's order compelling production of the documents requested in document request numbers 5, 19, and 37. The Texas Supreme Court then granted Plaintiffs' motion to sever the motion for leave to file a petition for a writ of mandamus for document requests numbers 5, 19, and 37 and overruled Plaintiffs' motion for leave to file a petition for a writ of mandamus as to those requests.

After this ruling, Plaintiffs sought an emergency stay of Judge Moyé's discovery orders regarding document requests numbers 5, 19, and 37 pending Plaintiffs' petition to the United States Supreme Court for a writ of certiorari. Both the Texas Supreme Court and Justice Scalia denied Plaintiffs' stay request.

Thus, in the proceeding presently before the Court, Plaintiffs challenge the constitutionality of Judge Moyé's orders compelling the production of document requests numbers 5, 19, and 37, the subject matter of which has already been presented to the Supreme Court of Texas (through a motion for leave to file a petition for a writ of mandamus) and to the United States Supreme Court (through an application for a stay). Judge Moyé has scheduled a hearing for July 23, 1993 at which Plaintiffs must show cause why they should not be held in contempt for refusing to comply with the aforementioned orders.

## II. Analysis

The requirements that Plaintiffs must meet to obtain injunctive relief from this Court are well established. Plaintiffs must prove (1) that they have a substantial likelihood of success on the merits of their claim; (2) that there is a substantial threat that they will suffer irreparable injury if the injunction is not issued, for which there is no adequate remedy at law; (3) that the threatened injury to Plaintiffs outweighs any damage that the injunction may cause to Defendants; and (4) that the injunction will not disserve the public interest. *Doe v. Duncanville Indep. School Dist.*, 994 F.2d 160 (5th Cir.1993); *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir.1984).

The first question is whether Plaintiffs have a substantial likelihood of succeeding on the merits of their claim in this Court. As noted above, Plaintiffs contend that disclosing the information sought in document requests 5, 19, and 37 will violate their (and the church members') free exercise, free association, and privacy rights. However, the Court must first consider whether it is appropriate to address the merits of this case at all. As will be discussed in detail below, the Court concludes that the doctrine announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, dictate that the Court must abstain from deciding the issues presented in this case. Thus,

---

**3.** Smith reports that a sweeping Confidentiality Order that has been entered in the state court proceeding restricts access to the requested discovery to the parties and their attorneys and staff. Smith contends that the Confidentiality Order meets the standards implicitly approved of in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

Plaintiffs cannot show a substantial likelihood of success on the merits.

The underlying state court civil proceeding continues. The state district court has compelled the production of the documents relevant to this suit, and the Texas Supreme Court has overruled Plaintiffs' motion for leave to file a petition for a writ of mandamus to quash the discovery orders. Under these circumstances, the Court concludes that a state court proceeding is ongoing and that the *Younger* doctrine applies.[4]

In *Younger*, the Supreme Court held that a federal district court must abstain from exercising jurisdiction in a suit when a state criminal proceeding is pending against the plaintiff at the same time. *Id.* at 41, 91 S.Ct. at 749 (reversing a federal injunction of a state criminal proceeding "as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances"). This doctrine is grounded primarily on considerations of equity, comity, and federalism. *Id.* at 43–44, 91 S.Ct. at 750; *DeSpain v. Johnston*, 731 F.2d 1171, 1175–76 (5th Cir.1984). Moreover, the *Younger* doctrine represents an independent barrier to § 1983 suits, such as this one, that seek injunctive and declaratory relief. *In re Fussell*, 928 F.2d 712, 715 (5th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1203, 117 L.Ed.2d 443 (1992).

The *Younger* doctrine has been substantially expanded by the Supreme Court. The same day that the *Younger* decision was announced, the Supreme Court held that a federal district court could not grant a de-claratory judgment when the applicant for such relief is the subject of a state court criminal prosecution. *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Most importantly for the purposes of the present case, the *Younger* doctrine has been applied to bar injunctive and declaratory relief in pending state court civil cases.

In *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), the Supreme Court held that the rationale of *Younger* applied to pending civil proceedings in which a state's interests in a proceeding "are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Id.* at 11, 107 S.Ct. at 1526. In *Pennzoil,* Texaco filed a civil action in federal court challenging the constitutionality of Texas' law that requires a party that wishes to prevent execution of an adverse judgment while it appeals that judgment to post a bond for the amount of the judgment, interest, and costs. Although a federal district court issued an injunction, the Supreme Court reversed, ruling that the federal district court should have abstained from deciding the constitutional issues presented in the federal case. The Supreme Court reached this conclusion because Texas' interest in its method of enforcing judgments was deemed to be important enough to justify abstention. The *Pennzoil* court relied on the "State's interest in protecting 'the authority of the judicial system, so that its orders and judgments are not rendered nugatory,'" *id.* at 14 n. 12, 107 S.Ct. at 1527 n. 12 (citation omitted), to hold that the district court should have abstained.[5]

---

4. Defendant Smith asserts that Plaintiffs have argued to the United States Supreme Court that the Supreme Court of Texas' denial of their motion for leave to file a petition for a writ of mandamus was a final order or decree of the state supreme court from which a petition for a writ of certiorari was proper. However, the Court doubts that the Texas Supreme Court's action represents a "final judgment or decree" for the purposes of 28 U.S.C. § 1257(a). Nevertheless, even if the state supreme court's action is such a final judgment or decree, the doctrine announced in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), clearly bars this Court's jurisdiction over this matter. The *Rooker–Feldman* doctrine holds that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *Feldman,* 460 U.S. at 482, 103 S.Ct. at 1315. Hence, even if the Texas Supreme Court's ruling is final, this Court has no jurisdiction over Plaintiffs' claim.

5. In *New Orleans Public Service, Inc. v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("*NOPSI*"), the Supreme Court indicated that *Younger* abstention is not warranted in all instances in which there are pending state court civil proceedings. In *NOPSI,* the Court held that a federal district court need not abstain from deciding a constitutional challenge to the New Orleans City Coun-

According to the Supreme Court, the principle of comity and the availability of a state forum make resort to federal courts in pending civil suits unnecessary. "So long as those challenge[d laws] relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." *Id.* at 14, 107 S.Ct. at 1527 n. 12; *see also Moore v. Sims,* 442 U.S. 415, 425–26, 99 S.Ct. 2371, 2378–79, 60 L.Ed.2d 994 (1979) (noting that "in the abstention context, the federal court should not exert jurisdiction if the plaintiffs 'had an *opportunity* to present their federal claims in the state proceedings,'" and that "abstention is appropriate unless state law clearly bars the interposition of the constitutional claim") (citations omitted) (emphasis in original). Given the similarities between *Pennzoil* and this case, the Court finds that *Pennzoil* is controlling.

Furthermore, in *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Supreme Court held that a federal district court should abstain from enjoining state court contempt proceedings. In *Juidice,* a state court had held Vail (who was a judgment debtor in the state court) in contempt of court for refusing to appear for a post trial proceeding. Vail then filed a complaint in federal district court, challenging the state's contempt procedures and seeking declaratory and injunctive relief. However, the Supreme Court held that the federal district court should abstain.

■ It would be anomalous for this Court to come to a different result in this case. Here, Plaintiffs are faced with a choice between complying with Judge Moyé's discovery orders and facing contempt proceedings. Assuming that Plaintiffs refuse to turn over the documents, they must show cause why

they should not be held in contempt of court at a July 23 state court hearing. However, nothing prevents Plaintiffs from raising their constitutional arguments at the show cause hearing. It would be fatuous for this Court to hold that Plaintiffs can escape the import of *Juidice* simply because the state court's contempt proceedings have not been decided.

Finally, Plaintiffs have not shown, or even alleged, that any exception to the *Younger* doctrine is applicable in this case. Plaintiffs have not claimed that the "bad faith" exception is applicable here. For this exception to apply, Plaintiffs must show that Judge Moyé's orders are tainted with bad faith or are motivated by a desire to harass Plaintiffs. *See Juidice,* 430 U.S. at 338, 97 S.Ct. at 1218. Plaintiffs make no such allegation. Moreover, the Court cannot find that the discovery orders are so "flagrantly or patently" unconstitutional that this exception to the *Younger* doctrine is warranted. *See Younger,* 401 U.S. at 53–54, 91 S.Ct. at 754–55. Nor have Plaintiffs attempted to show that the state court is in any way biased or inadequate. *See Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

In sum, Plaintiffs cannot show that they have a substantial likelihood of success on the merits of their claim in this Court.

Moreover, the equitable and comity-based considerations that underlie *Younger* abstention also demonstrate that Plaintiffs will not suffer an irreparable injury for which there is no adequate remedy at law if the requested injunction is denied. If the injunction is denied, Plaintiffs are faced with a contempt motion in the state court. As noted above, nothing prevents Plaintiffs from raising their constitutional arguments at that proceeding.

cil's denial of a portion of a rate increase that the utility commission had requested when there was a state suit presenting the same issues already pending. However, this holding does not change this Court's ruling. The *NOPSI* court wrote:

> Although our concern for comity and federalism has led us to expand the protection of *Younger* beyond state criminal prosecutions, to civil enforcement proceedings, and even to civil proceedings involving certain orders that are uniquely in furtherance of the state courts'

> ability to perform their judicial functions, it has never been suggested that *Younger* requires deference to a state judicial proceeding reviewing legislative or executive action.

*Id.* at 367–68, 109 S.Ct. at 2517–18 (citations omitted). This Court views the state court's orders compelling discovery as a type of order "uniquely in furtherance of the state courts' ability to perform their judicial functions". Thus, as discussed in the text, the Court concludes that abstention is warranted in this case.

Viewed from this perspective, the only "injury" that Plaintiffs will suffer if the requested injunction is denied is the "hardship" of presenting their federal constitutional claims in a state court. However, since the Supremacy Clause of Article VI requires state courts to apply the Constitution faithfully, and since the philosophical basis of the *Younger* doctrine rests on the presumption of federal and state court parity, Plaintiffs' asserted "injury" cannot be deemed to be "irreparable".

Given these conclusions, the Court need not address the final two considerations that govern requests for injunctive relief: whether the threatened injury outweighs any damage that the injunction may cause to Defendants, and whether the injunction will serve the public interest.

Put plainly, Plaintiffs have had, and continue to have, the opportunity to present in state court the same claims and arguments that they assert here. The state court clearly has jurisdiction, and this Court has no authority to interfere with the ongoing state court litigation. The relief that Plaintiffs request would constitute an "unprecedented intrusion into the Texas judicial system." *Pennzoil*, 481 U.S. at 10, 107 S.Ct. at 1525.

The Court therefore concludes that it must abstain from exercising jurisdiction over Plaintiffs' suit and that this case should be dismissed without prejudice.

### III. Conclusion

Plaintiffs' application for a temporary restraining order is **DENIED**. This case is **DISMISSED** without prejudice.

**SO ORDERED.**