Mary DONKOR and MacAnthony
Donkor, Plaintiffs,

v.

CITY OF NEW YORK HUMAN RE-
SOURCES ADMINISTRATION SPE-
CIAL SERVICES FOR CHILDREN,
Eric Brettschnieder, Chief Administra-
tor Special Services for Children;
Yvonne Thorton, Lisa Godell and Di-
ana Lopez, Caseworkers Special Servic-
es for Children (Godell, Thorton and
Lopez are sued individually and in
their capacities); Montefiore Medical
Center, Lea Harrison and George Fol-
tin (Harrison and Foltin are sued indi-
vidually and in their capacities as medi-
cal personnel of Montefiore Medical
Center), Defendants.

No. 87 Civ. 6772 (RWS).

United States District Court,
S.D. New York.

Oct. 20, 1987.

C. Vernon Mason, New York City, for plaintiffs.

Peter L. Zimroth, Corp. Counsel, New York City, for city defendants; Tai Park, Asst. Corp. Counsel, of counsel.

Garfunkel, Wild & Travis, P.C., Great Neck, N.Y., for Defendants Montefiore Medical Center, Lea Harrison and George Foltin; Leonard M. Rosenberg, of counsel.

## OPINION

SWEET, District Judge.

Mary Donkor and MacAnthony Donkor (the "Donkors") filed a petition for a writ of habeas corpus ("Petition") seeking custody of their two daughters from defendant New York City Human Resources Administration–Special Services for Children ("HRA–SSC"). The Petition also names as defendants the former Chief Administrator and three individual caseworkers of HRA–SSC, Montefiore Medical Center ("Montefiore"), George Foltin, M.D., a physician at Montefiore, and Lea Harrison, a healthcare worker at Montefiore. The Petition alleges violations of the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985, and pendant state law claims. All parties having submitted affidavits and exhibits in support of their positions, defendants' motion to dismiss will be treated as a motion for summary judgment to dismiss the Petition on grounds of lack of subject matter jurisdiction and abstention. Oral argument was held on the motions on October 9, 1987. Upon the following facts and conclusions, the Petition is dismissed.

### Facts

The Donkors are Ghanian nationals and lawful permanent United States residents who live in Bronx, New York. They have two daughters, Andrea (age 5) and Crystal (age 2), who since April 1986 have been living in foster homes in which they were placed by HRA–SSC. The Petition alleges the following facts which are accepted as true unless indicated otherwise.

On March 17, 1986, MacAnthony Donkor brought Andrea to Montefiore for a physical examination to qualify the infant for day care and for advice concerning the infant's vaginal irritation. Mr. Donkor informed Dr. Foltin that his wife had applied a preparation of ginger and water to Andrea's vaginal area as is the customary treatment in their home country for vaginal and genital irritations. Dr. Foltin objected strenuously to this form of treatment and informed the Donkors that he intended to file allegations of child abuse with HRA–SSC.

On April 2, 1986, Diana Lopez, an HRA–SSC caseworker ("Lopez"), visited the Donkors at home and interviewed Andrea. At the end of the interview, Lopez reported to the Donkors that the child had told her she had placed crayons, pennies and pencils in her vagina. Lopez informed the Donkors that this behavior could be explained as the

child's "phallic stage" and was not a significant problem. However, less than three weeks later on April 21, Lopez returned to the Donkor's home with police officers and took custody of Andrea and Crystal, leaving a handwritten note with a babysitter that did not specify reasons for removal or procedures for locating the children.

Based on the foregoing factual allegations, the Donkors have alleged that Dr. Foltin without just cause forwarded allegations of sexual abuse of Andrea to HRA-SSC and fabricated findings that Andrea's hymen was not intact and that she suffered from a sexually transmitted infection known as chlamydia. The Petition also alleges that Dr. Foltin conspired with Lopez, Harrison and others to remove Andrea and Crystal from their parent's home. Finally, the Petition alleges that certain individual defendants falsified documents and provided perjured testimony to support the allegations of sexual abuse against the Donkors. The Petition requests issuance of a writ of habeas corpus directing HRA-SSC to deliver Andrea and Crystal to the custody of their parents "pending the determination of this petition." The Petition also requests compensatory and punitive damages on behalf of the Donkors.

The defendants offer the following additional facts, which are denied by the Donkors.

In response to Mr. Donkor's March 17 request to have Andrea examined, Dr. Foltin examined the child on March 31, 1986 and noted in his report that Andrea appeared to have an enlarged vaginal opening, scarring on her vagina and that her hymen was not intact. Dr. Foltin ordered a culture to test for chlamydia which was returned as positive on April 7, 1986. On April 18 a chlamydial culture taken from Mr. Donkor was returned positive.

After taking protective custody of Andrea and Crystal on April 21, 1986, HRA-SSC filed a child abuse petition with the New York State Family Court, County of the Bronx ("Bronx Family Court"), alleging sexual abuse of Andrea by her father. On June 10, June 25 and July 1, 1986, the Bronx Family Court held evidentiary hearings at which the Donkors appeared represented by counsel. On July 1, the Bronx Family Court issued a finding of child abuse against the Donkors and scheduled a disposition hearing to determine the appropriate placement for the children. After hearing further testimony on September 9, November 1, 1986 and January 8, 1987, the Bronx Family Court issued a final order of disposition directing HRA-SSC to retain custody of Andrea and Crystal for a period of eighteen months ("January 8 Order").

The Donkors have not appealed from the January 8 Order of the Bronx Family Court to the New York State Supreme Court, Appellate Division. Although on June 11, 1987, the Donkors filed a request for return of their children with HRA-SSC, they have not petitioned the Bronx Family Court for review of their request or for a modification or setting aside of the January 8 Order. Instead, on September 22, 1987, the Donkors commenced this action for a writ of habeas corpus by serving defendants on that date with an order to show cause.

Based upon these facts, the defendants contend that because (i) the Donkors have not exhausted their state remedies and (ii) the Bronx Family Court has continuing jurisdiction over this matter, this court is without jurisdiction over the subject matter of this dispute and, in any event, should abstain from intervening in an ongoing state court proceeding.

## I. Jurisdiction Under 28 U.S.C. § 2254

The Donkors seek habeas corpus collateral review by a federal court of the Bronx Family Court decision. Although the Petition does not specify the statutory provision relied upon for the requested habeas relief, the vehicle for habeas corpus relief from a state court decision is 28 U.S.C. § 2254(a), which provides:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is

in custody in violation of the Constitution or laws or treaties of the United States. The defendants argue that federal jurisdiction is not available under § 2254 because (1) the writ does not encompass child custody matters and (2) the Donkors have failed to exhaust their state remedies as required by 28 U.S.C. §§ 2254(b), 2254(c). Because the defendants' primary contention is correct, consideration of the Donkor's alleged failure to exhaust state remedies will be deferred to the discussion of abstention below.

In *Lehman v. Lycoming County Children's Services,* 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982), the Supreme Court sharply curtailed the availability of the writ of habeas corpus in cases where the petitioner is not a prisoner or is not subject to any restrictions imposed by a state criminal justice system. In *Lehman,* a mother sought federal habeas corpus relief from a state court decision affirming the termination of her parental rights to her three sons. Instead of relying on prudential considerations to affirm the lower court's dismissal of the petition, *see Lehman,* 458 U.S. at 520, 102 S.Ct. at 3242 (Blackmun, J., dissenting), the Court erected a *jurisdictional* bar to habeas relief in child custody cases: "We therefore hold that § 2254 does not confer federal-court jurisdiction" to consider collateral challenges to state-court judgments involuntarily terminating parental rights. *Lehman,* 458 U.S. at 516, 102 S.Ct. at 3239–40.

The Donkors have attempted to distinguish *Lehman* from the instant case by arguing that the former should be restricted to preclude habeas relief only in cases where parental rights have been terminated. The Donkors have not provided any rationale for this distinction, nor can one be found in the *Lehman* opinion. To the contrary, the Court specifically stated that children in foster homes, like Andrea and Crystal in this case, are "not in the 'custody' of the State in the sense which that term has been used by this Court in determining the availability of the writ of habeas corpus." *Id.* at 510, 102 S.Ct. at 3237. While one might wish to adopt the dissent in *Lehman,* the Court's decision leaves little room for discretion on the part of a district court. The Donkors cannot rely on the writ of habeas corpus to relitigate in federal court the custody decision affecting their children.

## II. Jurisdiction Under the Civil Rights Statutes

Although brought as a petition for a writ of habeas corpus, the Petition invokes federal jurisdiction pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985. The Petition specifically alleges that the defendants under color of state law denied the Donkors their freedom of personal choice in family matters, a liberty protected by the Fourteenth Amendment. The Petition can also be construed as alleging that the Donkors were denied substantive due process in the Bronx Family Court; that is, the Petition's allegation that the January 8 Order was based on false evidence and perjured testimony implies that HRA–SSC failed to meet its burden of proof. Thus, upon a fair reading of the Petition, the Donkors have alleged deprivations of their federally protected rights.

### A. Younger Abstention

Defendants contend that this court should abstain from exercising jurisdiction over this case under the principles of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. *Younger* and its companion cases require a federal district court to abstain from granting either injunctive or declaratory relief when state criminal actions or certain categories of state civil proceedings are pending against the federal plaintiff at the time the federal action is commenced. The extension of the *Younger* doctrine beyond the criminal sphere reflects a belief that comity and federalism warrant similar deference to state courts in certain civil cases. As Judge Wisdom wrote in *DeSpain v. Johnston,* 731 F.2d 1171, 1177 (5th Cir.1984), in which the Fifth Circuit held that the district court should have abstained from hearing a child custody dispute:

Certain civil proceedings, however, involve state interests that are analogous

to those involved in state criminal proceedings. A federal court should abstain in cases in which the state is a party and the proceeding is "in aid of and closely related to criminal statutes" or the "offense to the State's interest [from federal intervention] is likely to be ... as great as it would be were this a criminal proceeding." (quoting *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 605, 95 S.Ct. 1200, 1208–09, 43 L.Ed.2d 482 (1975)). *See, e.g., Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed. 2d 994 (1979) (child abuse); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (return of welfare payments obtained by fraud); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (contempt of court). To determine whether it must abstain from hearing a civil case, the district court must consider (1) whether a state civil proceeding is pending at the time of the filing of the federal suit, (2) the magnitude of the state's interest in the proceeding, and (3) whether the federal plaintiff had the opportunity to litigate the federal issues in state court.

**1. Pendency of a State Proceeding**

▮ The law is well-settled that a plaintiff is free to bring a § 1983 suit in federal court without any requirement that she first exhaust state judicial remedies. *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 481–82, 5 L.Ed.2d 492 (1961). *Younger* and its companion cases, however, interpose an exhaustion requirement when a state proceeding is pending against the federal plaintiff prior to her initiation of suit in federal court. When a state proceeding is commenced before the federal suit is filed, the risk of federal interference is greater and the state interest is stronger. The state interest that is triggered by the institution of the state proceeding continues through the completion of the state appeals process. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975) ("a necessary concomitant of *Younger* is that a party ... must exhaust his state appellate remedies before seeking relief in the District Court"). Thus, "the *Younger* doctrine requires that federal courts abstain when a state proceeding is pending and the state appellate procedure has not been exhausted." *DeSpain v. Johnston,* 731 F.2d at 1177.

The Donkors have not asserted in their pleadings that a state proceeding is not pending against them; they argue simply that any state remedies that may be available to them are inadequate to protect their federal rights. Nonetheless, it must be determined whether a state proceeding is pending with the meaning of *Younger.*

Article 10 of the New York State Family Court Act of 1962, as amended ("Act"), was designed to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well-being. N.Y.Family Court Act § 1011 (McKinney 1983). Pertinent to the inquiry in this case are Sections 1061 and 1062 of the Act, which provide as follows:

§ 1061. *Staying, modifying, setting aside or vacating order*

For good cause shown and after due notice, the court on its own motion, ... on motion of the petitioner, or on motion of the child or on his behalf, or on motion of the parent or other person responsible for the child's care may stay execution, of [sic] arrest, set aside, modify or vacate any order issued in the course of a proceeding under this article.

§ 1062. *Petition to terminate placement*

Any interested person acting on behalf of a child ..., the child's parent, or the person legally responsible for the child may petition the court for an order terminating the placement. The petition must be verified and must show:

(a) that an application for the child's return to him home was made to an appropriate person in the place in which the child was placed;

(b) that the application was denied or was not granted within thirty days from the day application was made; and

(c) the grounds for the petition.

These sections reflect a strong legislative policy in favor of continuing family court

jurisdiction over the child and family so that the court can do what is necessary to further the child's welfare. *See Matter of Williams,* 106 Misc.2d 280, 431 N.Y.S.2d 334 (1980); *In re Samantha S.,* 80 Misc.2d 217, 362 N.Y.S.2d 921 (1974).

The January 8 Order of the Bronx Family Court placed Andrea and Crystal in the custody of HRA–SSC for a period of up to eighteen months. The Order expressly stated that the children were "not to be returned to parents without *prior* approval of [the] Court." Thus, at the time of the filing of this petition, the January 8 Order was still in force. Further, in July 1987, the Donkors initiated the first step required to vacate the January 8 Order by filing an application for their children's return with HRA–SSC. Although Section 1062(b) permits the Donkors to proceed with the filing of a petition in the family court if no action is taken on their application within thirty days of filing, the Donkors filed suit in this court rather than continue their application in the Bronx Family Court.

In view of the fact that at the time the Donkors commenced a federal action in this court, (1) the Bronx Family Court had continuing jurisdiction over this matter pursuant to both § 1061 of the Act and its own January 8 Order, (2) the Donkors had already commenced proceedings under § 1062 of the Act to regain custody of their children, and (3) the Donkors had only to file their petition with the Bronx Family Court to obtain review of their July 1987 application to HRA–SSC, a state court proceeding was "pending" within the meaning of *Younger.*

### 2. The State's Interest in the Proceeding

■ An element of the analysis under *Younger* concerns the level of the state's interest in the pending proceeding. "Family relations are a traditional area of state concern." *Moore v. Sims,* 442 U.S. at 435, 99 S.Ct. at 2383. More precisely, as the Supreme Court stated in denying habeas relief in *Lehman,* 458 U.S. at 513, 102 S.Ct. at 3238, the "State's interest in finality is unusually strong in child-custody disputes." New York State's compelling interest in child-custody disputes involving allegations of child abuse is reflected in the 1970 amendments to the Act which created a new Article 10 to establish a separate child abuse proceeding for the expeditious and expert handling of child abuse cases. Several courts to address this issue have found that a state's compelling interest in protecting the welfare of children warrants federal court abstention. *Brunken v. Lance,* 807 F.2d 1325 (7th Cir.1986); *Malachowski v. City of Keene,* 787 F.2d 704 (1st Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986); *DeSpain v. Johnston,* 731 F.2d 1171 (5th Cir.1984); *Minor v. Hennepin County Bureau of Social Services,* Civ. No. 4–85–4, slip op. (D.Minn. May 30, 1985) [Available on WESTLAW, DCT database]. Accordingly, the state's strong interest in this child custody dispute compels consideration of the third element of *Younger* abstention.

### 3. Availability of a Forum

■ The legitimacy of the *Younger* doctrine, of course, turns on the ability of the state courts to provide an adequate remedy for the violation of federal rights and upon the recognition that state courts share with federal courts the " 'solemn responsibility' ... to safeguard constitutional rights." *Trainor v. Hernandez,* 431 U.S. 434, 443, 97 S.Ct. 1911, 1917, 52 L.Ed.2d 486 (1977) (quoting *Steffel v. Thompson,* 415 U.S. 452, 460, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974)). This Circuit has often recognized the obligation and competence of state courts to decide federal constitutional questions. *See Texaco Inc. v. Pennzoil Co.,* 784 F.2d 1133, 1142 (2d Cir.1986); *Star Distributors, Ltd. v. Marino,* 613 F.2d 4, 8 n. 10 (2d Cir.1980).

In their memorandum in opposition to defendants' motion to dismiss the Petition, the Donkors have alleged that "defendants have blocked plaintiffs' review and evaluation by refusing to perfect procedural requirements for reconsideration of the finding of child abuse." Presumably, this charge refers to the failure of HRA–SSC to respond to the Donkor's application of July

1987 for the return of their children. However, as has already been discussed, Section 1062(b) of the Act solves the problem posed by an agency's failure to respond by giving the parents the right directly to petition the family court within thirty days of the filing of the application. Further, § 1112 of the Act authorizes an "appeal as of right from any ... decision in a case involving abuse ... to the appellate division of the supreme court and [such appeal] shall have preference over all other matters." Thus, had the Donkors petitioned the Bronx Family Court without success, they would still have had an expedited right of appeal to a state appellate court. The Donkor's failure to avail themselves of the state courts to contest the denial of their application for the return of their children should not give them access to federal court to obtain injunctive relief. *See Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *DeSpain v. Johnston,* 731 F.2d at 1179. Because the Donkors have not shown any procedural barrier to their assertion of constitutional issues in the state court proceeding, *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), it appears that they had and continue to have even now an opportunity to raise federal issues in state court.

The Donkors have alleged that caseworkers at HRA–SSC and employees of Montefiore falsified documents and committed perjury in the proceedings before the Bronx Family Court. The Donkors contend that these allegations foreclose the possibility of an adequate review of their constitutional claims in state court. However, the Donkors do not contend that the alleged misconduct of HRA–SSC will so obscure the impartiality of the state appellate courts that their state remedies are inadequate. To rely on claims of foul play at the initial state court proceeding to invalidate subsequent and as yet untried state appellate remedies disregards the faith in state courts on which *Younger* abstention is founded.

The foregoing analysis leads to the conclusion that prior to commencing this action in federal court, the Donkors had the opportunity to raise their federal issues in an ongoing state proceeding that implicated substantial state interests. The only remaining inquiry is whether one of the limited exceptions to *Younger* applies.

**B. Exceptions to Younger Abstention**

■ A federal court should not abstain when it finds that the state court proceeding is brought in bad faith or with the purpose of harassing the federal plaintiff. *Younger,* 401 U.S. at 49, 91 S.Ct. at 753; *Huffman,* 420 U.S. at 611, 95 S.Ct. at 1211–12. Although the Donkors have alleged that certain of the defendants acted in bad faith in removing Andrea and Crystal from their home and filing a child abuse petition in the Bronx Family Court, the record reveals that the defendants acted in accordance with established procedures. The Donkors have attached documents to the Petition that appear to contradict the factual findings on which the January 8 Order was based, but they have not claimed that the defendants either failed to produce, or prevented the Donkors from producing, those documents during the six days of hearings before the Bronx Family Court. Notwithstanding that the Donkors may eventually be able to prove that the Bronx Family Court's January 8 Order was not supported by a preponderance of the credible evidence, the record at this stage does not warrant a finding that the state court proceeding was motivated by bad faith or an intent to harass the Donkors.

■ Another exception to the *Younger* doctrine is the existence of extraordinary circumstances. Among these circumstances is a finding that a challenged state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger,* 401 U.S. at 53–54, 91 S.Ct. at 755. Here, the Donkors have not challenged a state statute nor have they challenged the adequacy of the procedures established under the Act. The Donkors have asserted that they are "constructively barred" from pursuing their state remedies "by the extraordinary time required for state re-

view." However, the Donkor's failure to appeal the January 8 Order and their decision to wait nearly six months before filing an application for the return of their children undermines their challenge to the alleged delays in state procedure. Moreover, as already discussed, § 1112 provides that appeals to the appellate division of a family court decision in a case involving abuse "shall have preference over all other matters."

In a letter to the court dated October 6, 1987, counsel for the Donkors expressed concern that the Donkor's youngest daughter, Crystal, was regressing psychologically and physically due to her prolonged separation from her parents. However, at oral argument on October 9, 1987, the Donkors did not make any allegations in this regard nor have they submitted any further documents to support the concern expressed in their attorney's letter to the court. Accordingly, to date the Donkors have not alleged the kind of extraordinary circumstances that would bring this case within one of the exceptions to *Younger*.

Upon the foregoing facts and conclusions, the *Younger* doctrine mandates abstention. Accordingly, the Petition is dismissed.

IT IS SO ORDERED.