**Peter Daniel THOMAS, Plaintiff,**

v.

**BETH ISRAEL HOSPITAL INC., Judge Mary Bednar; City of New York Human Resources Administration; Special Services For Children; William Grinker; Commissioner of the H.R.A., and Herman D. Wilson, Caseworker, S.S.C., Defendants.**

**No. 88 Civ. 5440 (RWS).**

United States District Court,
S.D. New York.

March 20, 1989.

Peter Daniel Thomas, New York City, pro se.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City (Abigail I. Petersen, Asst. Atty. Gen., John Sullivan, Legal Asst., of counsel), for defendant Judge Bednar.

Garfunkel, Wild & Travis, P.C., Great Neck, N.Y. (Leonard M. Rosenberg, of counsel), for defendant Beth Israel Medical Center.

## OPINION

SWEET, District Judge.

Defendant Beth Israel Medical Center (named in the complaint as Beth Israel Hospital Inc.) ("Beth Israel") and defendants Judge Mary Bednar ("Judge Bednar"), City of New York Human Resources Administration ("HRA"), Special Services for Children ("Special Services"), William Grinker, Commissioner of HRA (the "Commissioner"), and Herman D. Wilson ("Wilson"), (collectively the "City Defendants") have moved under Fed.R.Civ.P. 12(b) to dismiss the complaint of *pro se* plaintiff Peter Daniel Thomas ("Thomas") and under Fed.R.Civ.P. 56 for summary judgment dismissing the complaint. The motions were submitted on November 4, 1988.

For the reasons set forth below, the complaint against Beth Israel and Judge Bednar is dismissed with prejudice and the complaint against the remaining City defendants is dismissed with leave to replead.

### The Facts

According to affidavits submitted by the defendants, the police received an eyewitness report that Thomas had held his son, David, upside down by the ankles and attempted to place him inside a trash can. The police responded to that information on July 12, 1988.

Thomas alleges that he was sitting at the edge of Tompkins Square with his son David at 11:00 in the morning that day when three police cars arrived and the officers began questioning him. He denied beating and hitting his son and trying to stuff him in a garbage can. The police interrogated David separately, and Thomas observed David shaking his head. The police took David in one car and Thomas in the other to the local precinct where Thomas was handcuffed and then imprisoned. David was given food and questioned further.

Two to three hours later, Thomas claims, the police informed Thomas that they were taking David to the hospital and that a case worker would interview Thomas, after which David would be returned and Thomas released. One half hour later, Thomas was removed from his cell, handcuffed, taken to Beth Israel, handcuffed to a chair, and then interviewed for 3½ hours. After removal of the handcuffs, Thomas was interviewed by other hospital employees and then released.

Thomas alleges that he was told by the police that David was at Beth Israel, at Beth Israel he was told his son was at the Ninth Precinct, and at the Precinct he was told his son was in the custody of the appropriate City agency.

According to the defendants, when David was taken to Beth Israel, Josephina Ilano, M.D., ("Dr. Ilano"), a pediatrician on the Medical Staff of Beth Israel, a privately-owned and not-for-profit facility, examined David and observed multiple abrasions and ecchymoses (black and blue marks) on his legs. Beth Israel filed a Report of Suspected Child Abuse (the "Report") with the New York Central Register on Child Abuse, containing Dr. Ilano's medical diagnosis, signed by Dr. Ilano.

On July 13, Herman D. Wilson ("Wilson"), a caseworker on behalf of the Commissioner, filed a Neglect Petition in Family Court, County of New York, on David's

behalf. The Neglect Petition alleged that David was a neglected child whose physical, mental, or emotional condition had been impaired or was in imminent danger of becoming impaired as a result of Thomas's failure to exercise a minimum degree of care and that Thomas had failed to supply the child with proper supervision and guardianship. The Neglect Petition also alleged that Thomas had been observed shaking his son upside down in a trash can, as a result of which the child sustained cuts to his arms and legs.

Thomas alleges that he waited in Family Court all day July 13, but was unable to get a hearing or to see his son. The Court set 2:00 p.m., July 14 for a hearing pursuant to New York Family Court Act § 1027. At the July 14 hearing, Thomas testified in his own behalf. During his testimony, Judge Bednar, the presiding judge of the proceeding, found it necessary to recess the hearing and order Thomas to undergo immediate psychiatric evaluation by the court psychiatrist. After the recess, the psychiatrist testified that Thomas was suffering from chronic mental illness and would benefit from psychotherapy and/or medication.

Judge Bednar denied Thomas's motion for the immediate return of his son and remanded the child's custody to Special Services. She ordered the agency to explore the possibility of placing the child with his paternal grandmother. A fact-finding hearing was scheduled to be held in Family Court on September 13, 1988.

On September 13, 1988, a witness who had observed Thomas shaking his son upside down in a trash can appeared in Family Court. Thomas was also present with several character witnesses, some of whom confronted and harassed municipal defendants' witness, who then departed. The hearing was thereupon adjourned until October 14, 1988.

## The Complaint

Thomas filed his complaint against Beth Israel and the City defendants on July 25, 1988, seeking to regain custody of his son and to recover damages against the defendants. The complaint constitutes a petition for habeas corpus and alleges various civil rights violations under 42 U.S.C. §§ 1983, 1985, and 1986. The defendants have moved to dismiss the complaint under Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.

## Standard for Motion to Dismiss

■ A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts supporting his claim that entitles him to relief. *See Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must construe the complaint's allegations in the light most favorable to the plaintiff and accept these allegations as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Assoc.,* 423 F.2d 188, 191 (2d Cir.1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed. 2d 92 (1970); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1363, at 656 (1969). In considering a motion to dismiss a complaint prepared by a pro se plaintiff, courts should apply less rigorous standards than they apply to pleadings prepared by lawyers. *See Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir.1981).

## Standard for Summary Judgment

Summary judgment is authorized if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *See id.* 477 U.S. at 247–48, 106 S.Ct. at 2509–10; *Corselli v. Coughlin,* 842 F.2d 23 (2d Cir. 1988). All doubts are resolved against the moving party, and all favorable inferences are drawn in favor of the party against whom summary judgment is sought. *See*

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied,* —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1988); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (1983). The Supreme Court recently has made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

*Dismissal of the Petition for Habeas Corpus*

■ Thomas's present complaint constitutes a petition for a writ of habeas corpus for his son's release from state custody. A habeas writ is the remedy for obtaining release from any confinement that is contrary to the Constitution or fundamental law. *See Preiser v. Rodriguez*, 411 U.S. 475, 485, 93 S.Ct. 1827, 1833, 36 L.Ed.2d 439 (1973). The statutory basis for federal habeas corpus jurisdiction is found in 28 U.S.C. § 2254, and Thomas first must establish jurisdiction under that statute to obtain a federal court order mandating his son's release. This he cannot do because federal habeas corpus jurisdiction does not extend to child custody matters and because he has failed to exhaust his state remedies.

1. Federal Habeas Corpus Jurisdiction Over State Child Custody Determinations

■ In *Lehman v. Lycoming County Children's Services Agency*, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982), the Supreme Court held that the state's custody of a minor child was not the type of "custody" to which the federal habeas corpus statute applied. In *Donkor v. City of New York Human Resources Administration Special Services for Children*, 673 F.Supp. 1221, 1223–24 (S.D.N.Y.1987), this court ruled that *Lehman* bars federal habeas corpus jurisdiction over state court child custody determinations involving child abuse.

The circumstances present here are no different from those in *Donkor.* Thomas's son has been placed in Special Service's custody pursuant to a Family Court order based on allegations and testimony of child neglect. Pursuant to *Lehman* and *Donkor*, therefore, Thomas's attempt to invoke federal habeas corpus jurisdiction must be rejected.

2. Failure to Exhaust State Remedies as a Bar to Federal Habeas Corpus Jurisdiction

■ Even in the absence of *Lehman's* jurisdictional bar, Thomas's petition for habeas corpus must be dismissed because he has failed to exhaust available state remedies. The federal habeas corpus statute provides:

§ 2254. State custody: Remedies in Federal Courts.

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available state corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section if he has the right under the law of the State to raise, by any available procedure, the question presented.

Failure to comply with the exhaustion requirement mandates dismissal of an application for federal habeas relief. *See Boothe v. Superintendent, Woodbourne Correctional Facility*, 656 F.2d 27, 31 (2d Cir.1981); *Arce v. Henderson*, 477 F.Supp. 71, 73 (S.D.N.Y.1979), *aff'd*, 636 F.2d 1200 (2d Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1989, 68 L.Ed.2d 305 (1981);

*Williams v. Greco,* 442 F.Supp. 831, 833 (S.D.N.Y.1977).

Thomas has not pursued several state court remedies that give the Family Court continuing jurisdiction to modify or vacate any dispositional order and provide a variety of state judicial paths for Thomas to follow in his attempt to regain custody of his son. There is no question that Thomas has the right to raise in state court the questions presented here, and thus has not exhausted his state remedies as 28 U.S.C. § 2254(c) requires.

Pursuant to § 1112 of the Family Court Act, Thomas had the right to appeal from the Family Court order remanding David to Special Services's custody. Although he was represented by counsel at the Family Court hearings, he failed to appeal from Judge Bednar's July 14, 1988 order.

■ In addition, § 1061 of the Family Court Act, entitled *Staying, Modifying, Setting Aside or Vacating Order,* provides:

> For good cause shown and after due notice, the court on its own motion, ... on motion of the petitioner, or on motion of the child or on his behalf, or on motion of the parent or other person responsible for the child's care may stay execution, or arrest, set aside, modify or vacate any order issued in the course of a proceeding under this article.

The relief available through a motion to vacate a judgment constitutes a sufficient state remedy for the deprivation of constitutional guarantees and must be exhausted prior to seeking federal review. *See Flaherty v. Nadjari,* 548 F.Supp. 1127, 1129 (E.D.N.Y.1982).

■ Similarly, § 1062 of the Family Court Act, entitled *Petition to Terminate Placement,* provides:

> Any interested person acting on behalf of a child, ... the child's parent, or the person legally responsible for the child may petition the court for an order terminating the placement. The petition must be verified and must show:
>
> (a) that an application for the child's return to his home was made to an

appropriate person in the place in which the child was placed;

> (b) that the application was denied or was not granted within thirty days from the day application was made; and
>
> (c) the grounds for the petition.

Although Thomas alleges "fraudulent" reporting of suspected child abuse, this does not relieve him of the exhaustion requirement. He first must present this factual allegation to the state courts to fulfill § 2254(b)'s exhaustion requirement. *See Allah v. Henderson,* 526 F.Supp. 282, 284–85 (S.D.N.Y.1981), *aff'd,* 697 F.2d 287 (2d Cir.1982).

### Dismissal of the Civil Rights Claims

Thomas seeks damages from Beth Israel and the City defendants for alleged violations of the Civil Rights laws, 42 U.S.C. §§ 1983, 1985, 1986. As set forth below, however, Thomas's complaint in its present form fails to state a claim against any of these defendants.

1. Dismissal of Civil Rights Claims Against Beth Israel

   a. *Failure to State a Claim Under Section 1983*

■ To recover under 42 U.S.C. § 1983, Thomas must demonstrate deprivation of a constitutional right by a person acting under color of state law. *See Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). As a general rule, private hospitals do not act under color of state law for § 1983 purposes. *See, e.g., Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Schlein v. Milford Hosp.,* 561 F.2d 427 (2d Cir.1977); *Beverley v. Douglas,* 591 F.Supp. 1321 (S.D.N.Y.1984). The fact that Beth Israel was complying with the New York State Child Protective Services Act (Social Services Law Title 6, § 411 *et seq.*) by reporting suspected child abuse does not mean it acted under color of state law. *See Haag v. Cuyahoga County,* 619 F.Supp. 262, 283 (N.D.Ohio 1985), *aff'd,* 798 F.2d 1414 (6th Cir.1986); *Benavidez v. Gunnell,* 722 F.2d 615, 618 (10th Cir.1983). Nor is the hospital's conduct converted into state

action for § 1983 purposes by the fact that § 419 of the New York Social Services Law provides Beth Israel statutory immunity for reporting suspected cases of child abuse. *See Goss v. Memorial Hosp. Sys.,* 789 F.2d 353, 356 (5th Cir.1986). Because Beth Israel was not acting under color of state law, therefore, Thomas's § 1983 claim against it must be dismissed.

### b. Failure to State a Claim Under § 1985(2)

■ Thomas also apparently seeks relief under 42 U.S.C. § 1985(2) based on an alleged "conspir[acy] to deny me all my constitutional rights ... by holding me and my child against my will with no Judge or jury making any judgment against me...." However, a § 1985(2) claim requires an allegation of racial or other class-based discrimination. *See Singer v. Bell,* 613 F.Supp. 198, 201 (S.D.N.Y.1985); *Martin Hodas, East Coast Cinematics, Inc. v. Lindsay,* 431 F.Supp. 637, 645 (S.D.N.Y. 1977) (citing *Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir.1975)). Because Thomas does not allege any racial or other class-based discriminatory motive on the part of any of the defendants, his § 1985(2) claim must be dismissed.

### c. Failure to State a Claim Under § 1986

Thomas's failure to state a § 1985(2) claim against Beth Israel mandates dismissal of his § 1986 claim. Section 1986 does not provide a substantive independent federal cause of action. It provides a remedy for the knowing failure to prevent a § 1985 conspiracy and is derivative of a viable § 1985 conspiracy claim. *Martin Hodas,* 431 F.Supp. at 645.

### 2. Statutory Immunity

■ The Child Protective Services Act provides a comprehensive statutory system and procedural framework for the reporting of suspected cases of child abuse. Section 413 of the Child Protective Services Act requires certain individuals, including physicians, nurses, and any hospital personnel engaged in the admission, examina-tion, care or treatment of persons, to report or cause a report to be made when they have "reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child." Section 413 further provides:

> Whenever such person is required under this title in his capacity as a member of the staff of a medical ... institution ... he shall immediately notify the person in charge of such institution, ... who then also shall become responsible to report or cause reports to be made.

Section 420 of the Child Protective Services Act makes the failure to report a case of suspected child abuse a criminal offense (Class A misdemeanor, punishable in New York State by up to one year in prison) and subjects individuals who wilfully fail to make such reports to civil liability for the damages proximately caused by such failure.

Section 419 of the Child Protective Services Act provides individuals who report suspected cases of child abuse with good faith immunity from civil or criminal liability for such reporting. That section states in pertinent part:

> Any person, official or institution participating in good faith in ... the making of a report [of suspected child abuse] ... pursuant to this title shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions. For the purpose of any proceeding, civil or criminal, the good faith of any such person, official or institution required to report cases of child abuse or maltreatment ... shall be presumed....

■ Here, Dr. Ilano's medical examination of David, which revealed multiple abrasions and black and blue marks, both old and new, clearly indicated the possibility of physical abuse or maltreatment and required Beth Israel to file a report of suspected child abuse. Thomas's allegations of "fraudulent" reporting of child abuse are factually incorrect and insufficient to rebut the statutory presumption that Beth Israel acted in good faith in reporting David as a suspected victim of child abuse.

The reporting requirements that trigger the qualified immunity provision of § 419 of the Child Protective Services Act are premised not on actual or conclusive proof of abuse, but on reasonable cause to suspect such abuse.

On facts similar to those at issue in this case, the New York State Appellate Division, Second Department, granted summary judgment dismissing a state court action for libel and slander, infliction of emotional distress, and *prima facie* tort. *See Kempster v. Child Protective Servs. of the Dep't of Social Servs. of the County of Suffolk*, 130 A.D.2d 623, 515 N.Y.S.2d 807 (2d Dep't 1987). In that case, a fourteen-month old infant was brought to the defendant hospital's emergency room with various unexplained injuries. A nurse who suspected child abuse filed a report with the Albany Registry of Child Protective Services, and the infant temporarily was placed in the custody of the Suffolk Department of Social Services pursuant to an order of the Suffolk County Family Court.

The plaintiff sued, alleging that the hospital had "wrongfully, maliciously and falsely accused plaintiff ... of having abused her child." The Court held that the infant's hospital chart was ample proof that a reasonable basis to suspect child abuse existed and that the hospital defendant was immune from civil liability pursuant to § 419 of the Child Protective Services Act. *See id.; see also Satler v. Larsen*, 131 A.D.2d 125, 520 N.Y.S.2d 378 (1st Dep't 1987); *Miller v. Beck*, 82 A.D.2d 912, 440 N.Y.S.2d 691 (2d Dep't 1981).

Pursuant to § 419 of the Child Protective Services Act and *Kempster*, Thomas's claims against Beth Israel defendants are dismissed.

### 3. Dismissal of Civil Rights Claims Against Judge Bednar

#### a. *Failure to Meet the Threshold Pleading Requirements for a Civil Rights Action*

Judge Bednar is not mentioned in the original complaint, but a later letter to the court apparently amending the complaint added her as a defendant. Thomas says named her "[b]ecause she removed my son from my custody," an action that allegedly was "unjustafiable [sic]."

It is well-settled that "where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Morabito v. Blum*, 528 F.Supp. 252, 262 (S.D.N.Y.1981) (citing *Gutierrez v. Vergari*, 499 F.Supp. 1040, 1052 (S.D.N.Y. 1980); *Holloway v. Carey*, 482 F.Supp. 551, 553 (S.D.N.Y.1979); *"Child" v. Beame*, 417 F.Supp. 1023, 1025 (S.D.N.Y.1976)); *see also Kirkland v. Bianco*, 595 F.Supp. 797, 799 (S.D.N.Y.1984).

Moreover, in this Circuit a civil rights complaint "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.1987); *see also Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir.1976); *Powell v. Jarvis*, 460 F.2d 551 (2d Cir.1972). Courts have applied this rule of pleading civil rights claims to *pro se* litigants who assert claims without supporting facts. *See Wade v. Carey*, 503 F.Supp. 25, 26 (S.D.N.Y.1980); *Raitport v. Chemical Bank*, 74 F.R.D. 128, 129 (S.D.N.Y.1977).

Because of the absence of any cognizable claim against Judge Bednar, therefore, the complaint will be dismissed.

#### b. *Judicial Immunity*

Even if Thomas stated his claims against Judge Bednar with sufficient specificity, dismissal still would be warranted by the doctrine of judicial immunity. Thomas seeks monetary relief in the sum of ten thousand dollars for "each day my child is separated from me." He bases the relief he seeks against Judge Bednar upon actions she took in her capacity as a judge in judicial proceeding in the New York Family Court.

Judges are absolutely immune from suits for damages for actions they take in their

judicial capacity, even where those actions are alleged to have been done in excess of authority, maliciously, or corruptly, except where they act in the "clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978). This doctrine applies to claims under the Civil Rights Acts. *See Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

In *Stump,* the Supreme Court stated the standard for determining whether judicial immunity should apply:

[T]he factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity.

*Stump,* 435 U.S. at 362, 98 S.Ct. at 1107.

Here, Thomas has not alleged, nor could he allege, facts to overcome Judge Bednar's judicial immunity.

4. Dismissal of Civil Rights Claims Against the Remaining City Defendants

*a. Younger Abstention*

■ Thomas's requested relief under the Civil Rights statutes constitutes a collateral attack on the validity of the Family Court order that temporarily placed David in the custody of Social Services pending completion of fact-finding hearings and the issuance of a final dispositional order. Pursuant to the abstention doctrine the Supreme Court articulated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and this court followed in *Donkor v. City of New York Human Resources Administration Special Services for Children,* 673 F.Supp. 1221 (S.D.N.Y.1987), this court must abstain from exercising jurisdiction over Thomas's claims.

The *Younger* abstention doctrine counsels that a federal court should not interfere with pending state judicial proceedings. To determine whether it must abstain from hearing a civil case, the district court must consider (1) whether a state civil proceeding is pending at the time of

the filing of the federal suit; (2) the magnitude of the state's interest in the proceeding, and (3) whether the federal plaintiff has the opportunity to litigate the federal issues in state court. *Donkor,* 673 F.Supp. at 1225.

The child neglect proceeding Special Services commenced against Thomas on June 13, 1988 predated this action (commenced on or about July 25, 1988) and currently is pending until all of Thomas's state court appeal rights are exhausted. *See DeSpain v. Johnston,* 731 F.2d 1171, 1178 (5th Cir. 1984).

The Supreme Court has applied abstention to the temporary removal of a child as a result of state court findings of child abuse. *See Moore v. Simms,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). This court found in *Donkor* that "New York State's compelling interest in child-custody disputes involving allegations of child abuse is reflected in the 1970 amendments to the [Family Court] Act which created a new Article 10 to establish a separate child abuse proceeding for the expeditious and expert handling of child abuse cases." 673 F.Supp. at 1226.

Further, the obligation and competence of state courts to decide federal constitutional questions is well settled in the Second Circuit. *See Donkor,* 673 F.Supp. at 1226 (citing *Texaco Inc. v. Penzoil Co.,* 784 F.2d 1133, 1142 (2d Cir.1986); *Star Distrib., Ltd. v. Marino,* 613 F.2d 4, 8 n. 10 (2d Cir.1980)). Thus, Thomas may assert his civil rights claims in the pending neglect proceeding, upon appeal of any decision thereof, or in the context of a petition under §§ 1061 or 1062 of the Family Court Act.

Because Thomas "ha[s] the opportunity to raise [his] federal issues in an ongoing state proceeding that implicated substantial state interests," *Donkor,* 673 F.Supp. at 1227, but has not done so, he may not pursue his claims in federal court.

*b. Failure to Exhaust State Remedies*

■ Thomas's failure to exhaust available state court remedies also requires

dismissal of his civil rights claims. Exhaustion of state remedies generally is not a prerequisite to the filing of a federal civil rights complaint, but dismissal is appropriate where a determination of such claims would involve a ruling on the validity of a state court judgment. *See Doe v. Russotti,* 503 F.Supp. 942 (S.D.N.Y.1980). Moreover federal courts will not permit a plaintiff to circumvent the exhaustion requirements of 28 U.S.C. § 2254 by attaching claims for monetary damages to an application for habeas relief. *See Bullock v. Cuyler,* 463 F.Supp. 40, 43 (E.D.Pa.1978).

*Conclusion*

For the reasons set forth above, the complaint against Beth Israel and Judge Bednar is dismissed with prejudice. Although no claim of a cognizable injury is presented by the pleadings in their present form, it is conceivable that the facts as viewed by Thomas might give rise to such a claim. The complaint against the remaining City defendants is therefore dismissed with leave to replead within twenty (20) days.

No probable cause is present warranting an appeal.

Judgment on notice will be entered but such entry will be stayed for twenty (20) days to permit Thomas to seek leave to file an amended complaint.

It is so ordered.